

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Hon. Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-6760
Re: Validity of special appro-
priation for the General
Land Office making certain
refunds from various funds.

Your request for opinion has been received
and carefully considered by this department. We quote
from your request as follows:

"The Forty-ninth Legislature in the
General Appropriation Act for the department
made an appropriation to the General Land Office
for the fiscal year 1946, of $50,000 and for the
fiscal year ending August 31, 1947, of $10,000
for refunds to purchasers and lessees or pro-
spective purchasers and lessees of public lands,
minerals, or timber, and to remitters in other
instances as hereinafter provided.

"The preceding appropriation entitled
'General Land Office Special' shall be
for the purpose of making refunds in
accordance with the laws of this State
from the funds affected to purchasers
and lessees of public lands, minerals,
and timber, or their vendees or assigns,
or to prospective purchasers or lessees
of public lands, minerals and timber,
money which has been or which may be
paid by them into the State Treasury or
to the Attorney General in any of the
following instances:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"'(a)  Through error made in good faith, to be supported by the official signature of the Commissioner of the General Land Office, or by the Attorney General, to whom such payment is made.

"'(b)  Where the payment is made in accordance with law, but title cannot issue or possession cannot pass, because of conflict in boundaries, erroneous sales, erroneous lease or other cause.

"'(c)  In case of sale of leased lands.

"'(d)  Where lease money has been paid on previous forfeited sales, the same having been reinstated and all interest paid.

"'(e)  Where erroneous timber sales or leases have been made.

"'(f)  Where overpayments have been made in final payments to the State Treasurer due to decreased acreage or other causes.

"'(g)  Where reduction has been made in acreage of timber sold or leased.

"'(h)  Where payments are made or have been made in good faith by claimants of lands in instances where the applicants have no right to purchase said lands as revealed by investigations of titles as provided by law.

"'The amounts herein appropriated shall be paid out of the respective Funds to which said payments may have been made or may be accredited, and all claims for refunds except those embraced in subdivision (a) of Section 1 shall be certified by the certificate of the Commissioner of the General Land Office, and all such claims shall be verified by the affidavit of the claimant and approved by the Attorney General as to the correctness of the claim and

as to whom due, provided that the money
so paid by any purchasers or lessees in
case of sale of land by the purchaser, or
assignment of the lease by the lessee after
payment of such money, shall be refunded so that
such refund shall be paid to the person upon
whom the loss falls in case of failure of
title, or right of possession.'

"This provision is in keeping with Senate
Bill No. 281 of the Regular Session of the Forty-
ninth Legislature.

"The question has arisen in this de-
partment as to whether the above mentioned ap-
propriation is valid for the following reasons:

"1. Is it specific as to funds; that
is, is the $50,000 above mentioned for the
year 1946 appropriated out of the General
Revenue Fund, the Available School Fund,
Permanent School Fund, or is it to be broken
down among all funds wherein a refund might
be required? If so, what portion is to be
made to the separate funds?

"2. Is the appropriation legal against
the Permanent School Fund for any money
erroneously placed in such fund? In
other words, can a refund be made from the
Permanent School Fund or any other con-
stitutional fund where expenditure of such
fund is limited by the Constitution for
certain purposes?"

Senate Bill 281 of the 49th Legislature of
Texas, 1945, reads as follows:

"PUBLIC LANDS - REFUNDS - CHAPTER 145
S. B. No. 281
"An Act providing for the refunding of
certain monies paid in good faith by purchasers and
lessees or prospective purchasers and prospective
lessees of public lands, minerals or timber, or
paid in good faith on transactions in connection
with such public lands, minerals and timber in
instances where the funds to which such payments
are accredited are not entitled to such monies; and
declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE
   OF TEXAS:

      "Section 1. That upon proper proof
as hereinafter provided, the Comptroller of the
State of Texas is hereby authorized and directed
to draw his warrant in refund of monies paid into
the State Treasury on public lands in good faith
but where the funds to which such monies may be
accredited or may have been accredited, are not
entitled thereto in any of the following in-
stances:

      "(a) Through error made in good faith,
to be supported by the official signature of the
Commissioner of the General Land Office, or of the
Attorney General, to whom such payment is made;

      "(b) Where the payment is made in
accordance with law, but title cannot issue or
possession cannot pass, because of conflict in
boundaries, erroneous sales, erroneous lease or
other cause;

      "(c) In case of sale of leased lands;

      "(d) Where lease money has been paid
on previous forfeited sales, the same having been
reinstated and all interest paid;

      "(e) Where erroneous timber sales or
leases have been made;

      "(f) Where overpayments have been
made in final payments to the State Treasurer
due to decreased acreage or other causes;

      "(g) Where reduction has been made in
acreage of timber sold or leased;

      "(h) Where payments are made or have
been made in good faith by claimants of lands in
instances where the applicants have no right to
purchase said lands as revealed by investigations
of titles as provided by law.

      "Sec. 2. All refunds herein provided for
are to be paid out of the respective funds to which

said payments have been made or may be accredited
after specific appropriations have been made ac-
cording to law, and all claims for refunds except
those embraced in subdivision (a) of Section 1
shall be certified by the certificate of the Com-
missioner of the General Land Office, and all
such claims shall be verified by the affidavit
of the claimant and approved by the Attorney
General as to the correctness of the claim and as
to whom due, provided that the money so paid by
any purchasers or lessees in case of sale of
land by the purchaser, or assignment of the lease
by the lessee after payment of such money, shall
be refunded so that such refund shall be paid to
the person upon whom the loss falls in case of
failure of title, or right of possession.

"Sec. 3. The fact that the present law
providing for refunds on public lands is not broad
enough to enable the deposit of monies, in certain
instances, to the funds to which they belong for
fear that the remitters may be entitled to refunds
of small portions, thereby causing an enormous
General Land Office suspense account, depriving the
respective funds of revenues therefrom, creates an
emergency and an imperative public necessity that
the Constitutional Rule requiring all bills to be
read on three several days in each House be suspended,
and it is so suspended, and this Act shall be in
effect from and after its passage, and it is so
enacted.

"Passed the Senate, April 4, 1945; Yeas
29, Nays 0; passed the House, April 17, 1945; Yeas
123, Nays 0. Filed without the Governor's signature,
May 2, 1945. Effective May 2, 1945."

Opinion No. O-5367 of this Department, addressed
to you, holds a certain appropriation from the Permanent School
Fund for the purpose of reimbursing a person for funds erroneous-
ly paid by him as bonus and rental upon alleged vacancies in
public school lands (the State's title thereto having failed by
judgment of a court of competent jurisdiction) to be a valid and
lawful appropriation from the Permanent School Fund. We quote
from said opinion as follows:

"As is apparent from the portions of the bill quoted above, the Act does not purport to appropriate moneys rightfully belonging in the Permanent School Fund, to uses and purposes other than those to which the fund is dedicated by constitutional provision; but the purpose of the appropriation is to require the Permanent School Fund to account for moneys not rightfully belonging to it which in equity and good conscience it cannot retain. Such an appropriation, in our opinion, does not violate the terms of Article 8, Section 7 of the Constitution, prohibiting the diversion of special funds. You are therefore advised that such an appropriation from the Permanent School Fund is valid.

"Similar appropriations have heretofore been approved by this department:

"See the Opinions listed in the following volume of the letter opinions of this department -- Volume 377, page 980, page 939; Volume 371, page 594, page 711; Volume 367, page 58."

We answer your first question as follows:

We think the appropriations inquired about are specific and valid. The $50,000 appropriation for 1946 and the $10,000 appropriation for 1947 are payable out of the various funds affected. In other words, in 1946 proper claims properly allowed will be paid out of the respective funds to which the payments sought to be refunded were paid, or accredited, until the total amount of payments on such approved claims reaches the sum of $50,000. Likewise in 1947, proper claims properly allowed will be paid out of the respective funds to which the payments sought to be refunded were paid, or accredited, until the total amount of payments on such claims reaches the sum of $10,000.00.

We answer your second question in the affirma-

tive. See Opinion No. 0-5367, referred to above, a copy of which you have in your files.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By      Wm. J. Fanning
              Assistant

WJF:BT

APPROVED AUG 9 1945

FIRST ASSISTANT
ATTORNEY GENERAL



APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN